Gwendolyn Smith, M.A., J.D.
4207 S.E. Woodstock Blvd. #107
Portland, Oregon 97206
juredoc@gmail.com; (707) 849.0303

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gwendolyn Smith on behalf of herself and her minor child Zeus Harrison Smith, Plaintiffs, v. Paul Payne and the Santa Rosa Press Democrat, Defendants. | CASE NO.: CV 12 1732 DMR COMPLAINT E-filing |

PARTIES AND JURISDICTION

1. Plaintiffs Gwendolyn Smith, M.A., J.D., and Zeus Harrison Smith are residents of the state of Oregon.

2. Defendant Paul Payne is a staff writer for the Santa Rosa Press Democrat, a daily newspaper operated out of Santa Rosa, California.

3. At the time of the facts herein alleged and giving rise to this Complaint, Plaintiffs were residing in Sebastopol, California and Ashland, Oregon, before moving to their permanent place of residence in Portland, Oregon.

4. This action arises the 9th Amendment to the Constitution of the United States and various state statutes as hereinafter more fully appears. The Court has federal question jurisdiction under 28 U.S.C. § 1331.

5. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

6. This Court also has diversity jurisdiction under the provisions of 28 U.S.C. § 1332. Jurisdiction and venue are proper in this Court for this action.

## FACTUAL BACKGROUND

7. This is an action for trespass, assault, invasion of privacy, unfair and deceptive trade practices, intentional infliction of emotional distress, and two counts of conspiracy.

8. On the morning of April 8th, 2010, Defendant journalist Paul Payne [hereinafter "Payne"] and his photographer appeared uninvited on the steps leading up to the second-floor unit where Plaintiffs Gwendolyn Smith and Zeus Harrison Smith, age 15 at the time, were residing.

9. Plaintiffs had heard, minutes before his arrival on the landing atop of the steps leading into the entranceway to their home, a man's voice in their yard below, shouting loudly and repeatedly up through the open windows of the unit to which they had sole and exclusive legal possession, "Hey, serial squatters!"

10. Plaintiff Gwendolyn Smith [hereinafter "Smith"] became frightened upon hearing this unknown man's steps the stairs to their home and rushed to lock the sliding glass door that served as the unit's entrance.

11. Because of the hostile, menacing tone of the unknown man's voice, his uninvited entry and his aggressive verbal attacks, Smith feared for her physical safety and that of Smith's child.

12. After a heated prolonged verbal exchange through the entranceway glass and subsequently the windows during which time Smith and her son attempted without success to get Payne off the landing and he and his sidekick to leave their yard, Smith ascertained who Defendants were and Payne and his partner eventually left.

13. Smith, shocked, threatened and physically ill from the encounter, spent the rest of the day making calls and subsequently traveling to the Press Democrat's physical facilities in Rohnert Park and Santa Rosa, its editors and staff writer Payne in an effort to set up a personal interview before the paper went to press the following morning with Payne's front page story concerning Plaintiffs and the default hearing at which Plaintiffs' lawyer failed to show.

14. However, Payne refused to grant such personal interview and editors at the Santa Rosa Press Democrat refused to hold off on the story until such interview could be held and thus balanced coverage of a two-sided dispute procured.

2

15. With the all-too apparent assistance of a cabal of other individuals including but not limited to several unethical lawyers acting in violation of law (on retainer to do so by individuals other than their alleged clients,) Plaintiff's ex-husband and defendants in civil actions Plaintiffs were prosecuting, Payne and other journalists at the Santa Rosa Press Democrat [hereinafter "PD"] continued to invade Plaintiffs' privacy for the next six months, creating and producing one-sided, factually inaccurate coverage of Plaintiffs' affairs.

16. On occasion of the fourth, and last, in the series of stories that appeared about Plaintiffs, Payne smirkingly called Smith, leaving a message purporting to solicit Smith's comments "before the story goes to print" a full two hours *after* deadline of the story's going to print.

FIRST CAUSE ACTION:  TRESPASS TO LAND

17. Paragraphs 1 through 16 are incorporated herein as though fully set forth herein.

18. On April 8, 2010, Plaintiffs were in possession of certain real property situated at 5202 Douglas Lane, Sebastopol, California, which they used for their residence.

19. On April 8, 2010, Defendant, without the consent or authority and against the will of Plaintiff, entered onto Plaintiffs' exclusive secluded property by way of an easement to the barn building's curtilage and steps leading up to said building constituting Plaintiffs' residence behind 5200 Douglas Road, Sebastopol, California, with intent to intrude, intimidate and harass.

20. The effect of Defendant's trespass was intrusion on Plaintiffs' seclusion, assault, deception, conspiracy and the resulting pain, suffering and mental anguish associated with these wrongs.

21. Plaintiff and her son, a single parent household, now live in fear that Defendants will again trespass upon their property to invade their privacy.

22. Defendants acted with fraud, malice and oppression, and intended to trespass for the purpose of committing civil infractions and inflicting the aforementioned pain, suffering and mental anguish upon Plaintiffs.  Punitive and exemplary damages are therefore appropriate.

23. Plaintiffs also request recompense for the emotional distress this trespass caused and was intended to cause.

3

## SECOND CAUSE OF ACTION: ASSAULT

24. Paragraphs 1 through 23 are incorporated herein as though fully set forth herein.

25. On April 8, 2010, Plaintiffs were in their home when they heard shouting in the yard below and footsteps on the stairs to the landing. Fearing for her physical safety, Plaintiff took cover behind a curtain and moved to lock the sliding glass door, hoping to get to it in time to keep Defendant from entering.

26. Defendant Payne as an agent of Defendant PD intended to cause and did cause Plaintiffs to suffer apprehension of an immediate harmful contact.

## THIRD CAUSE OF ACTION: INVASION OF PRIVACY

27. Paragraphs 1 through 26 are incorporated herein as though fully set forth herein.

28. Defendant, purportedly reporting on a bench trial held in the absence of Smith or Smith's lawyer, on a matter in which a full jury trial where all parties were present was to have been held, showed up on private property to publicize a private dispute whose address was under still under seal with the court for confidentiality in an unlimited civil action for eviction.

29. Said action, lodged with the Court approximately one month earlier, had been filed by a plaintiff other than the one whose hearing Defendant was supposedly reporting upon.

30. Under the Ninth Amendment of the Constitution, Plaintiffs have a protected expectation of privacy in their home.

31. Defendant's aggressive, deceitful and unethical manner of violating said privacy was an intrusion highly offensive to Plaintiffs as it would be to any reasonable person.

## FOURTH CAUSE OF ACTION: CONSPIRACY TO INVADE PRIVACY

32. Paragraphs 1 through 31 are incorporated herein as though fully set forth herein.

33. Defendant Payne conspired together with others including but not limited to lawyers James Sansone and Lisa Gygax and plaintiffs Barbara Wilt and Constance Cook in California eviction

actions to intrude upon Plaintiffs' seclusion by violating California statutes and codes of professional responsibility circumscribing "trying one's action in the press," for the illegitimate purpose of generating as much negative publicity as possible so that Plaintiffs would not get a fair trial on a private, still-pending and confidential matter.

34. Defendants did so by trespassing upon Plaintiff's home, in which Plaintiffs had a protected privacy interest, and intruded further by means of obtaining and publicizing without Plaintiffs' consent photographs of Plaintiffs' home.

FIFTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34. Paragraphs 1 through 33 are incorporated herein as though fully set forth herein.

35. Defendants, required to behave in a manner expected of citizens in a civil, safe society, owed a duty of care to Plaintiffs not to inflict emotional distress upon them.

36. Defendants knew and should have known that failure to exercise due care by prematurely publicizing the particulars of a still-pending matter under seal in a deeply misleading manner, participating in conspiracy, trespassing, assaulting, and utilizing deceptive trade practices including but not limited to those described herein would cause Plaintiffs severe emotional distress, yet Defendants willfully and intentionally did so, regardless of said harm they could and in fact did cause.

37. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered severe humiliation, mental anguish, emotional and physical distress, and have been injured in mind and body, continuing to suffer and exhibit loss of appetite, sleep deprivation, insomnia, muscle tension, headaches, nightmares, inflammation and profound grief and fear.

SIXTH CAUSE OF ACTION: CONSPIRACY TO INTENTIONALLY INFLICT EMOTIONAL DISTRESS

38. Paragraphs 1 through 37 are incorporated herein as though fully set forth herein.

39. Defendants conspired with others including but not limited to the aforementioned parties to willfully and intentionally cause Plaintiffs the above-described emotional distress.

40. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered said emotional distress.

SEVENTH CAUSE OF ACTION: UNFAIR AND DECEPTIVE TRADE PRACTICES

41. Paragraphs 1 through 40 are incorporated herein as though fully set forth herein.

42. On the morning of April 8, 2010, Smith had no idea that her lawyer's nonappearance was unexcused (in contrast to what he had represented to Smith on the previous afternoon) by the Court or that a hearing would be held in her absence. Plaintiffs, unprepared to comment on this completely unexpected turn of events, were in an emergency situation where legal counsel had failed in to bring to fruition two years' work to have the civil dispute heard by impartial jury but was instead heard by one judge hearing only one side of the matter.

43. Defendant Payne and his editors at the PD had no business taking advantage of this emergency situation by rushing to print a story in which Smith had put them on notice would be incorrect as to its facts.

45. Payne's approaching Plaintiffs where, when and and how he did so was outrageous and offense conduct in the sale of the service of journalism.

46. Plaintiffs as well as other consumers of newspapers hold an implicit assumption that what they read is true, or at least accurately researched, and, if "news," of balanced coverage, if not on an editorial page, because this is what newspapers such as and including the PD represent.

47. Yet because stories that Defendant Payne wrote and Defendant PD ran not only *created* the very problems that the PD could then subsequently "report" and capitalize upon, said stories, unconscionably obtained and presented, in violation of journalistic codes of ethics, were untrue and misleading, thus constituting deceptive trade practices within the meaning of Cal. Business and Profession Codes s. 17500 et seq.

## JURY DEMAND

Plaintiff demands a jury trial of all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Actual damages;

2. Compensatory damages;

3. Punitive damages;

4. Any other relief necessary to fully compensate plaintiff for all of the detriment proximately caused by defendant, and

5. Any other relief deemed proper by the court.

Dated: April 4, 2012

Respectfully submitted:

_____
Gwendolyn Smith, M.A., J.D.